IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALPHA L. SLAUGHTER, | ) | CASE NO. 5:11 CV 1308 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Alpha L. Slaughter, for supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Slaughter had severe impairments consisting of convulsive and non-convulsive seizures.[1] The ALJ made the following finding regarding Slaughter's residual functional capacity ("RFC"):

> After consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range at all exertional levels but with the following non-exertional limitations: He cannot work at unprotected heights, ladders, ropes, and scaffolds. He cannot work around moving machinery, hazards, and occupationally drive automotive equipment.[2]

---

[1] Transcript ("Tr.") at 13.

[2] *Id.* at 14.

The ALJ determined that the above-quoted RFC did not preclude Slaughter from performing his past relevant work as a foundry worker and construction worker II.[3] He, therefore, found Slaughter not under a disability.[4]

Slaughter asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Slaughter challenges the RFC finding and the step four finding that he can perform his past relevant work.

In my procedural order in this case,[5] I identified the following issues as important to my decision:

- Does substantial evidence support the ALJ's decision to give considerable weight to the opinion of Hershel Goren, M.D., the medical expert?

- Does substantial evidence support the decision of the ALJ not to order consultative examinations as to orthopedic impairments or Slaughter's IQ?

- Does substantial evidence support the ALJ's analysis of the notes of Slaughter's treating sources, none of whom gave opinions as to work-related limitations?

- Does substantial evidence support the ALJ's finding that Slaughter's statements about the limiting effects of his impairments are not credible to the extent inconsistent with the residual functional capacity finding?

---

[3] *Id.* at 16.

[4] *Id.*

[5] ECF # 13.

- Based on the resolution of the foregoing issues, does substantial evidence support the ALJ's finding that Slaughter was capable of performing his past relevant work?

The parties have presented arguments in their briefs consistent with these issues.

I conclude that the ALJ's findings as to the weight assigned to Dr. Goren's opinion, Slaughter's credibility, and Slaughter's RFC have the support of substantial evidence and must be affirmed. The ALJ's decision not to order further consultative examinations was not an abuse of discretion. The ALJ's finding that Slaughter can perform his past relevant work does not have the support of substantial evidence. The case must be remanded for reconsideration of that finding.

## Analysis

**1. Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[7] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2. Substantial evidence in support of the weight given to the opinion of the medical expert, Hershel Goren, M.D.**

The medical expert called by the ALJ to testify at the hearing in this case, Hershel Goren, M.D., gave an RFC opinion[9] consistent with the RFC finding adopted by the ALJ.[10] The ALJ gave Dr. Goren's opinion "considerable weight."[11] The record contains no RFC opinion from a treating or a consulting examining source.

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[9] Tr. at 59.

[10] *Id.*

[11] *Id.* at 15.

An opinion of a medical expert who has reviewed all of the claimant's relevant medical records may serve as substantial evidence in support of an RFC finding, particularly when the record contains no RFC opinion for another medical source.[12] The plaintiff has the burden of proof of his RFC at step four of the sequential evaluation process.[13]

Here Dr. Goren reviewed all relevant medical records.[14] He based his RFC opinion upon a normal 24-hour electroencephalogram done in October of 2008, the infrequency with which his treating neurologist ordered blood tests for levels of anti-epileptic drugs, and that the results of those tests showed that the drug levels were therapeutic.[15] He opined that although Slaughter has convulsive and non-convulsive seizures, seizure frequency is not very high.[16] He further opined that his seizure impairments imposed the postural and environmental limitations that the ALJ incorporated into the RFC finding.[17]

Although Slaughter presents arguments for an interpretation of the medical evidence supporting limitations different from and greater than those opined by Dr. Goren and adopted

---

[12] *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989); *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *Garrison v. Heckler*, 765 F.2d 710, 713-15 (7th Cir. 1985).

[13] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

[14] Tr. at 57.

[15] *Id.* at 57-58, 60-61.

[16] *Id.* at 57, 60.

[17] *Id.* at 59.

by the ALJ, a reasonable mind could accept the evidence and Dr. Goren's interpretation thereof as adequate to support the ALJ's finding. Substantial evidence supports that finding.

### 3. The ALJ's decision not to order additional orthopedic or psychological evaluations

At the close of the hearing, Slaughter's counsel requested further orthopedic and psychological evaluations.[18] The ALJ ordered no additional examinations, however.

The regulations do not require an ALJ to refer a claimant for a consultative examination but merely grant the authority to do so if the record does not contain sufficient evidence to make a determination.[19] The ALJ's decision as to referral for such evaluations is reviewed for abuse of discretion.[20]

As for orthopedics, the transcript contained treatment records related to Slaughter's knee condition, which showed mild to moderate levels of degenerative changes on the x-rays and a bone scan.[21] Slaughter's treating physician, Dr. Dela Paz, recommended no treatment beyond over-the-counter Tylenol.[22] This evidence is sufficient for the RFC determination and supports the ALJ's decision not to order a further orthopedic evaluation.

---

[18] *Id.* at 63.

[19] *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990).

[20] *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

[21] Tr. at 300-02, 388.

[22] Tr. at 336, 339.

As for further psychological evaluation, Slaughter completed high school and a year of college education,[23] and the state agency psychologist and state agency psychiatrist found insufficient evidence of any mental impairment, despite allegations of a brain aneurysm and depression.[24] Moreover, Dr. Carl Tishler, the state agency psychologist, stated that Slaughter had failed to supply functional information to the state agency disability office despite repeated requests by telephone and mail.[25] Slaughter had the burden of proof and, although represented, offered no evidence of a mental impairment or limitations caused thereby. Under those circumstances, the ALJ properly exercised his discretion to not order a further examination.

### 4. Substantial evidence in support of the credibility finding

The ALJ found that Slaughter's statements about the intensity, persistence, and limiting effects of his symptoms were not credible to the extent inconsistent with the residual functional capacity finding.[26]

I have extensively set out the law applicable to judicial review of an ALJ's credibility finding in my opinion in *Cross v. Commissioner of Social Security*.[27] I incorporate by reference that discussion of the applicable law here.

---

[23] *Id.* at 24.

[24] *Id.* at 280-94.

[25] *Id.* at 292.

[26] Tr. at 14.

[27] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732-33 (N.D. Ohio 2005).

The ALJ expressly stated that he had considered Slaughter's subjective complaints in accordance with the requirements of Social Security Ruling 96-7p1 and 20 C.F.R. § 404.1529),[28] and set forth the various factors that he had considered in his credibility assessment, including medical records and medical source opinions, objective clinical findings, treatment regimen and activities.[29] In particular, the ALJ noted that in October 2008, Plaintiff's objective diagnostic tests showed he had a normal 24-hour EEG, and blood tests done in March 2007 and October 2008 showed therapeutic levels of serum Dilantin and Carbamazepine.[30] The ALJ also considered Slaughter's complaints of arthritis in his knees, for which he took non-prescription Aleve and did not use a cane or crutches.[31] He considered objective diagnostic evidence of knee x-rays and a bone scan that showed mild or moderate degenerative changes in the knee joints and some small effusions.[32] The ALJ also discussed Slaughter's sporadic treatment history during the relevant period, the lack of any recent hospitalizations for his medical problems, and his use of medication that maintained the stability of his seizure problem, and his use of over-the counter medication for his knee pain.[33] He observed that Slaughter had no side effects from the medications he used that

---

[28] Tr. at 14.

[29] *Id.* at 14-16.

[30] *Id.* at 15, citing evidence at Tr. 190, 305-06, 309-10, 312-15.

[31] *Id.* at 15, referring to Slaughter's testimony at Tr. 50, 55.

[32] *Id.*, citing evidence at Tr. 300-02.

[33] *Id.*

would interfere with his ability to work.[34] The ALJ also reviewed Slaughter's activities, which included housework, cooking, and shopping;[35] washing laundry;[36] feeding and dressing himself; lawn work; and shoveling snow.[37] The ALJ also too into consideration the opinion evidence from the medical expert, Dr. Goren, indicating Slaughter's impairments were not of disabling severity and limiting Slaughter to the same degree as the ALJ found.[38]

The ALJ's articulation of the reasons for finding Slaughter less than totally credible is sufficient to satisfy me that he considered the relevant evidence and that a reasonable mind might accept such evidence as adequate to support the credibility finding. There exists, therefore, no compelling reason to disturb that finding.[39]

**5. Substantial evidence in support of the finding that Slaughter can return to his past relevant work**

The ALJ found that Slaughter was not disabled because he could return to his past relevant work.[40] He did not call a vocational expert but instead relied upon the testimony of

---

[34] *Id.*

[35] *Id.*, consistent with testimony that he prepared simple meals for himself, such as sandwiches and microwaved food (Tr. 46).

[36] *Id.* at 46.

[37] *Id.* at 47-48.

[38] *Id.* at 15, referring to testimony at Tr. 56-65.

[39] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[40] Tr. at 16.

a vocational expert at a hearing on a claim with the same onset date, a claim denied but not appealed.[41]

The decision on the earlier application is included in the record.[42] The transcript of the testimony at the hearing on that application is not.

The RFC findings in both decisions are similar but not identical. In the first decision, the RFC provided for avoidance of "exposure to environmental hazards such as heights and moving machinery."[43] The second decision added some additional limitations: "he cannot work at unprotected heights, ladders, ropes, and scaffolds. He cannot work around moving machinery, hazards, and occupationally drive automotive equipment."[44] Without the benefit of the transcript of the vocational expert's testimony at the first hearing, I cannot determine if that testimony is sufficient to support the step four finding on the second application.

The Commissioner argues that the ALJ correctly took notice of the finding in the earlier decision and did not need to call another vocational expert at the second hearing.[45] What the ALJ took notice of was the vocational expert's testimony about the skill and exertional levels of the past relevant work.[46] I might surmise, but cannot confirm, that the

---

[41] *Id.* at 11, 16.

[42] *Id.* at 69-76.

[43] *Id.* at 72.

[44] *Id.* at 14.

[45] ECF # 18, at 6.

[46] Tr. at 16.

ALJ at the first hearing asked if Slaughter could have performed this past relevant work with the additional non-exertional limitations incorporated in the RFC finding. It is conjecture beyond the proper scope of judicial review to conclude, based on the record before me, that Slaughter can perform past relevant work with the additional and more specific non-exertional limitations adopted in the RFC finding of the second decision.

I am reluctant to remand the case on this narrow point because it is probable that a vocational expert presented with a hypothetical consistent with the RFC that I am affirming would testify that Slaughter could perform the past relevant work or, alternatively, that he could perform other work that exists in substantial numbers in the national economy. Nevertheless, on this record, I cannot rule based on my estimate of such probabilities.

Substantial evidence does not support the step four finding here on this record.

## Conclusion

For the foregoing reasons, the decision of the ALJ is affirmed in part and reversed in part. The Commissioner's denial of Slaughter's application for supplemental security income is reversed and the case remanded for the limited purpose of reconsideration of the finding that Slaughter can perform his past relevant work with the assistance of the testimony of a vocational expert.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[47] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.


Dated:  September 20, 2012                              s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

---

[47] 28 U.S.C. § 2412(d)(1)(A).